UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD C. SMITH,

        Plaintiff,

v.

FIRST INDIANA BANK, ET AL.,

        Defendants.

                                            /

Case No.  12-10280

SENIOR UNITED STATES DISTRICT JUDGE
ARTHUR J. TARNOW

MAGISTRATE JUDGE PAUL J. KOMIVES

## ORDER AND JUDGMENT GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [15]

This case concerns allegations by Plaintiff Richard C. Smith[1] that Defendant HSBC Mortgage Services, Inc. engaged in fraud in misleading Plaintiff that a loan modification was being considered by Defendant while foreclosure proceedings were moving forward, and subsequently breached a loan modification agreement.  On March 26, 2013, the Court held a hearing and heard argument.  For the reasons stated below, Defendant's Motion for Summary Judgment [15] is GRANTED.

### I. Procedural Background

Plaintiff originally filed this action on January 20, 2012. Scheduling/settlement conferences were held on May 4, June 4, and August 24, 2012.  Defendant Trott & Trott was voluntarily dismissed by Plaintiff on June 4, 2012.  Defendant First Indiana

---

[1] On July 19, 2013, Plaintiff's counsel informed the Court of Mr. Smith's death during the pendency of this action.

Bank has never appeared in this case. Defendant HSBC Mortgage Services' Motion for Summary Judgment [15] was filed on September 27, 2012.

## II. Factual Background

On or about February 2, 2006, Plaintiff granted a mortgage on his property to Defendant First Indiana Bank in exchange for a promissory note in the amount of $200,000. Plaintiff alleges that the mortgage loan was securitized, with HSBC Mortgage Services, Inc. as the trustee of the mortgage loan trust, and OneWest Bank as the servicer.

In January 2008, HSBC agreed to a six-month "hardship restructuring" and reduced Plaintiff's interest rate from 7.89% to 4.25%. Def.'s Ex. 1. In December 2008, HSBC permanently reduced Plaintiff's interest rate to 7.14%.

Plaintiff made his last payment on his mortgage on October 21, 2009. On December 8, 2009, Plaintiff filed for Chapter 7 bankruptcy. He was discharged from bankruptcy on March 22, 2010. Plaintiff's debt to HSBC was discharged in bankruptcy, although HSBC's lien on his property remained in place.

On or about March 31, 2010, HSBC mailed Plaintiff's bankruptcy attorney a letter indicating that Plaintiff might be eligible for a modification to his mortgage based on HAMP. On April 6, 2010, HSBC mailed Plaintiff's attorney a letter offering various options, including loan modifications. On May 10, 2010, Plaintiff began the loan modification process with HSBC.

In the midst of this process, on May 21, 2010, Plaintiff received a letter from Trott & Trott (voluntarily dismissed from the instant suit) presenting itself as the designated debt collection agent of HSBC Mortgage Services and offering Plaintiff the opportunity to apply for a loan modification pursuant to Mich. Comp. L. § 600.3205. The letter stated that Trott & Trott had been designated as the agent that "has authority to make agreements under MCL sections 600.3205b and 600.3205c. Plaintiff wrote several letters to Trott & Trott disputing the debt. Plaintiff also alleges in his complaint that he began working with Abayomi Community Development Corporation, a MSHDA organization on the list provided by Trott & Trott, to qualify for loan modification. On June 8, 2010 Trott & Trott sent Plaintiff a letter stating that it had received a request to work out a loan modification and that the foreclosure scheduled for August 19, 2010 would not take place. *See* Def's Ex. 3. The letter requested a number of financial documents from Plaintiff. Defendant claims these documents were never received.

Defendants allege that on August 4, 2010, they offered Plaintiff a permanent loan modification to reduce his interest rate from 7.14% to 5.63%, with monthly principal and interest payments of $1,186.62. On October 8, 2010, Plaintiff sent HSBC a letter in which he agreed to the terms of the monthly payments on principal and interest of his loan. However, next to "voluntary monthly payments" and

"previous unpaid payments" Plaintiff wrote "disagree . . . unable to afford."  HSBC did not respond to Plaintiff's inquiry regarding a more complete explanation of the terms.  On November 2, 2010 and December 2, 2010, HSBC sent Plaintiff letters stating that his inquiry had been received and that "extensive research" had delayed HSBC's response.  Def.'s Ex. 8.

On November 29, 2010 Plaintiff received two additional letters from Trott & Trott.  The first letter was identical to the May 21, 2010 letter from Trott & Trott.  The second letter informed Plaintiff that Trott & Trott was accelerating the collection of his loan.  On December 7, 2010, after consulting another MSHDA credit counselor, Green Path, Inc., Plaintiff sent a letter to Trott & Trott requesting a mediation meeting.  On December 12, 2010, Plaintiff sent a letter to both HSBC and Trott & Trott expressing confusion as to which organization was responsible for discussing his loan modification.

On December 13, 2010, Trott & Trott sent Plaintiff a letter noting that a housing counselor had contacted them to discuss modification, and that as a result foreclosure would be delayed until after February 27, 2011.  *See* Def.'s Ex. 5.  The letter requested a number of documents.  Defendant alleges that Plaintiff never provided these documents.  On January 12, 2011, Trott & Trott sent Plaintiff a letter noting its letter of December 13, 2010 and stating that Plaintiff had not provided the requested

financial documents. The letter stated that "eligibility review [for loan modification] cannot be completed at this time." *See* Def.'s Ex. 6. The letter warned of foreclosure on or after February 27, 2011.

On May 13, 2011, Plaintiff received a notice of foreclosure with a sale date of June 15, 2011.

At some point in May, 2011, Plaintiff sent HSBC a letter questioning the pending foreclosure sale scheduled for June 15, 2011, stating that he had agreed in writing to accept the previously-offered loan modification in terms of "the monthly payment for the principal balance and the fees and interest that may be added to the note," but requesting terms and conditions of the agreement in writing. Plaintiff received a letter from HSBC stating that a response would be delayed "due to the extensive research required in this situation." Plaintiff alleges he never received the written agreement.

Plaintiff alleges that on July 7, 2011, HSBC sent him a letter offering him a loan modification. He states that he "contacted HSBC and indicated his desire to accept the new loan terms and was told that an agreement would be mailed out to him." However, HSBC's July 7, 2011 letter is not an offer to provide a loan modification. *See* Def's Ex. 1. Rather, it states that if Plaintiff makes all past due payments and legal fees and "reinstates" his loan, HSBC will consider a loan

modification. It also reviews the past modifications that were offered in 2008 and 2009, and discusses Plaintiff's request for validation of his debt.

On July 20, 2011, Plaintiff's home was sold at a sheriff's sale.

### III. Analysis

Summary judgment is appropriate under Fed. R. Civ. P. 56(c)(2) where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that movant is entitled to judgment as a matter of law." The facts and all inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 250 (6th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once a moving party produces evidence establishing lack of a genuine issue of material fact, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.* The mere existence of "a scintilla of evidence" in support of a plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson*, 477 U.S. at 252.

## A. Standing

Defendant first argues that Plaintiff lacks standing to challenge the foreclosure because the statutory redemption period has expired. Relying on *Overton v. Mortgage Elec. Registration Sys.*, 2009 WL 1507342 (Mich. Ct. App. 2009) (unpublished), Defendant argues that after the statutory redemption period expires, Plaintiff "had no interest in the property." Defendant then argues that Plaintiff's purported lack of "interest" in the property denies him Article III standing, for which a plaintiff must show "(1) it has suffered an 'injury in fact' . . . (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Cleveland Branch, NAACP v. City of Parma, Ohio*, 263 F.3d 513, 523-24 (6th Cir 2001) (quoting *Friends of the Earth, Inc. v. Laidlaw Entl. Servs.*, 528 U.S. 167, 180-81 (2000)). Defendant's argument is particularly remarkable because Plaintiff filed his case within the statutory redemption period. Nevertheless, Defendant appears to be arguing that if the redemption period runs while a case sits in court, a plaintiff loses their right to have their case heard by the court.[2]

---

[2] Defendant partially withdrew this argument during the motion hearing, based upon the recent decision in *Mitan v. Federal Home Loan Mortg. Corp.*, 703 F.3d 949 (6th Cir. 2012), in which the court held that a plaintiff may bring an action challenging a mortgage even after the redemption period had run when alleged structural defects rendered the mortgage void. Nevertheless, Defendant did argue at the motion hearing that no such structural defect existed in the instance case, and thus that Plaintiff lacked standing.

Defendant's argument rests on a misconception of standing. This misconception is clearly explained in *Langley v. Chase Home Finance LLC*, 2011 WL 1130926 (W.D. Mich. Mar. 28, 2011):

> Many Defendants suggest the basis for the ruling in *Overton* is a lack of Plaintiff's standing once the redemption period expires, but the Court of Appeals does not actually say this. Nor would it seem like Article III standing could possibly be in doubt. After all, the Plaintiffs in such cases are the last lawful owner and possessor of the property. Moreover, they often remain in continuing possession of the property notwithstanding any Sheriff's sale and expiration of a redemption period. Moreover, Plaintiffs in such cases claim a continuing right to lawful ownership and possession based on defects in the process used by Defendants to divest them of those rights. This certainly seems to satisfy the basic Article III requirement of "injury in fact," as well as any prudential considerations tied to a "zone of interests" analysis. Indeed, it is hard to imagine a person with a better claim to standing to challenge the process at issue. Of course, having standing to bring a claim does not mean you have a valid claim on the merits. That is a different question. *Overton* is best viewed as a merits decision, not a standing case.

*Langley*, 2011 WL 1130926 at *2 n.2.

This Court agrees with the reasoning in *Langley*, as did the court in *Rainey v. U.S. Bank Nat. Ass'n*, 2011 WL 5075700 at *3 (E.D. Mich. Oct. 25, 2011) (Lawson, J.). "The Michigan Supreme Court has long held that the mortgagor may hold over after the foreclosure by advertisement and test the validity of the sale in the summary [eviction] proceeding." *Mfg. Hanover Mortg. Corp. v. Snell*, 370 N.W.2d 401, 404 (Mich. Ct. App. 1985) (citing *Reid v. Rylander*, 258 N.W. 630 (Mich. 1935)). "Otherwise, the typical mortgagor who faces an invalid foreclosure would be without remedy . . ." *Id.*

The Court finds that the expiration of the statutory redemption period for a foreclosure does not deprive a plaintiff of standing to challenge the subsequent eviction by attacking the propriety of the foreclosure by advertisement. This is particularly the case when, as here, a plaintiff files an action within the statutory redemption period, but the period runs during the pendency of the case.

Accordingly, Plaintiff has standing in this case.

### Fraud

Defendant argues that Plaintiff failed to plead with particularity his claim of fraud. The elements of fraud in Michigan are (1) that a defendant made a material misrepresentation (2) that was false (3) that when made by the defendant the defendant knew the misrepresentation was false, or made the statement recklessly (4) with the intention that it should be acted on by a plaintiff (5) that the plaintiff did act in reliance on the misrepresentation and (6) suffered injury.

In his complaint, Plaintiff states that:

> 39. That Defendant HSBC and T&T made false representations to Plaintiff through correspondences informing Plaintiff to apply for a loan modification knowing that Defendants were not going to comply with the loan modification rules.
> 40. That Plaintiff relied on this information, believing that he had no other recourse to save his home and so consequently he sought no other remedy to save his home except to continually correspond with T&T and HSBC and to continually comply with T&T and HSBC's wishes.
> 41. That Defendants wanted Plaintiff to believe that there was no other remedy to save his home.

42. That Defendants then wrongfully denied Plaintiff's right to be reviewed for a loan modification causing Plaintiff damages.

Here, it appears that Defendant HSBC did offer Plaintiff a loan modification, and that the offer was rejected by Plaintiff. While Defendant's subsequent actions only served to confuse the process, it is also true that there is no evidence that Defendant misrepresented the availability of a loan modification. A loan modification was available and was rejected by Plaintiff because of the specific terms of the modification. Thus, the alleged fraud complained of by Plaintiff, that "Defendant was not going to comply with the loan modification rules" is not supported by any evidence in the record.

For the reasons stated above, Defendant's Motion for Summary Judgment is GRANTED with respect to the claim of fraud.

### B. Breach of Contract

Defendant argues that Plaintiff's breach of contract claim fails because the Home Affordable Modification Program ("HAMP") does not provide a private right of action whereby homeowners may sue a bank for failing to comply with the act. Defendant also denies failing to comply with the act. Defendant is correct that HAMP does not provide a private right of action - however, HAMP also does not prevent a plaintiff from bringing state-law-claims of breach of contract.

Nevertheless, Defendant has established that there is no genuine issue of material fact as to the question of whether a contract existed between Plaintiff and Defendant. A plaintiff seeking to recover for breach of contract must prove that a contract existed between the parties, the defendant breached the contract, and the breach damaged the plaintiff. *Rausch v. Yeo*, 2007 WL 162569, at *2 (Mich. App. Jan. 23, 2007) (citing *Lawrence v. Will Darrah & Assocs., Inc.*, 516 N.W.2d 43 (Mich. 1994)).

> "In order to form a valid contract, there must be a meeting of the minds on all the material facts." *Kamalnath v. Mercy Memorial Hosp. Corp.,* 194 Mich.App. 543, 548, 487 N.W.2d 499, 503 (1992). "'Meeting of the minds' is a figure of speech for mutual assent." *Id.* at 548-49, 487 N.W.2d at 503. "A contract is made when both parties have executed or accepted it, and not before." *Id.* at 549, 487 N.W.2d at 503. The party seeking to enforce the contract has the burden to show the existence of the contract.

*High v. Capital Senior Living Properties 2-Heatherwood, Inc.*, 594 F. Supp. 2d 789, 798 (E.D. Mich. 2008) (Lawson, J.).

Defendant's August 4, 2010, communication to Plaintiff appears to have been an offer of a loan modification. The question is thus whether Plaintiff's letter of October 8, 2010 (Def.'s Ex. 4) constitutes "acceptance" and establishes "mutual consent" on "all the material facts," or "all the essential terms" of the contract. This does not appear to be the case.

In his response to Defendant's offer of a loan modification, Plaintiff wrote that he accepted the principal balance amount, and wrote "agree" next to the unpaid interest, escrow balance, and principal and interest monthly payments of $1,186.82. However, Plaintiff wrote "disagree . . . unable to afford" next to "voluntary monthly payments" and "previously unpaid payments." Plaintiff also wrote that unpaid late charges and "other fees" were "acceptable upon agreement," presumably some future agreement based upon a different loan modification.

Because Plaintiff did not accept Defendant's offer of a loan modification, his claim for breach of contract fails. Accordingly, Defendant's Motion for Summary Judgment is GRANTED with respect to the breach of contract claim.

### C. Plaintiff's Claims Under Mich. Comp. L. §§ 600.3205a-c (Foreclosure by Advertisement)

Michigan's foreclosure-by-advertisement statute contains several provisions discussing the proper procedure to be followed in cases involving possible loan modification. In particular, the statute says the following:

> (g) That if the borrower and the person designated under subdivision (c) do not agree to modify the mortgage loan but it is determined that the borrower meets criteria for a modification under section 3205c(1) and foreclosure under this chapter is not allowed under section 3205c(7), the foreclosure of the mortgage will proceed before a judge instead of by advertisement.

Mich. Comp. Laws § 3205a.

In addition, another requirement involves the bank being required to provide a person seeking a loan modification certain information, and prohibits a person who qualifies for a loan modification from being foreclosed on by advertisement:

> (5) Before 90 days after the notice required under section 3205a(1) is sent or 10 days after the meeting between the borrower and the person designated under section 3205a(1)(c), whichever is later, the person designated under section 3205a(1)(c) shall provide the borrower with both of the following:
> (a) A copy of any calculations made by the person under this section.
> (b) If requested by the borrower, a copy of the program, process, or guidelines under which the determination under subsection (1) was made.
> (6) Subject to subsection (7), **if the results of the calculation under subsection (1) are that the borrower is eligible for a modification, the mortgage holder or mortgage servicer shall not foreclose the mortgage under this chapter but may proceed under chapter 31.3** If the results of the calculation under subsection (1) are that the borrower is not eligible for a modification or if subsection (7) applies, the mortgage holder or mortgage lender may foreclose the mortgage under this chapter.
> (7) If the determination under subsection (1) is that the borrower is eligible for a modification, the mortgage holder or mortgage servicer may proceed to foreclose the mortgage under this chapter if both of the following apply:
> **(a) The person designated under section 3205a(1)(c) has in good faith offered the borrower a modification agreement prepared in accordance with the modification determination.**
> (b) For reasons not related to any action or inaction of the mortgage holder or mortgage servicer, the borrower has not executed and returned the modification agreement within 14 days after the borrower received the agreement.
> (8) If a mortgage holder or mortgage servicer begins foreclosure proceedings under this chapter in violation of this section, the borrower may file an action in the circuit court for the county where the mortgaged property is situated to convert the foreclosure proceeding to a judicial

> foreclosure. If a borrower files an action under this section and the court determines that the borrower participated in the process under section 3205b, a modification agreement was not reached, and the borrower is eligible for modification under subsection (1), and subsection (7) does not apply, the court shall enjoin foreclosure of the mortgage by advertisement and order that the foreclosure proceed under chapter 31.

Mich. Comp. Laws § 3205c (emphasis added).

Plaintiff argues that Defendant found Plaintiff to be qualified for a loan modification, but did not offer him a loan modification. Defendant argues that they did in fact provide Plaintiff with a loan modification agreement, but that Plaintiff rejected this agreement. *See* Def.'s Ex. 4.

It is clear from the record that Plaintiff was offered a loan modification and did not accept the modification. Accordingly, Defendant was permitted to foreclose by advertisement pursuant to Mich. Comp. Laws § 3205c(7). Defendant's Motion for Summary Judgment is GRANTED with respect to the violation of Michigan's foreclosure-by-advertisement statute.

### D. Plaintiff's Claim of Civil Conspiracy

Plaintiff has failed to establish the necessary elements of civil conspiracy. Plaintiff appears to argue that Defendant conspired with Trott & Trott to act as if it had authority to engage in loan modification when it did not have such authority. Plaintiff points to no evidence in the record that would establish a genuine issue of material fact in his claim of conspiracy. As such, Defendant's Motion for Summary Judgment is GRANTED with respect to the claim of civil conspiracy count.

## IV. Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment [15] is **GRANTED**.

**SO ORDERED**.

                                           s/Arthur J. Tarnow
                                           ARTHUR J. TARNOW
                                           SENIOR UNITED STATES DISTRICT JUDGE

Dated: July 31, 2013